**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 08-cv-01414-REB

MAUREEN MARY MCKENNA,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

---

**ORDER REVERSING DISABILITY
DECISION AND REMANDING TO COMMISSIONER**

---

**Blackburn, J.**

      The matter before me is plaintiff's **Complaint** [#3] filed July 7, 2008, seeking

review of the Commissioner's decision denying plaintiff's claims for disability insurance

benefits and supplemental security income benefits under Titles II and XVI of the Social

Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's

final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the

need for oral argument. I reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

      Plaintiff alleges that she is disabled as a result of post-traumatic stress disorder,

depression, anxiety, knee and back pain, and right arm impingement. After her

applications for disability insurance and supplemental security income benefits were

denied, plaintiff requested a hearing before an administrative law judge. This hearing

was held on December 21, 2007. At the time of the hearing, plaintiff was 47 years old.

She has a high school education and past relevant work experience as a retail sales

clerk and retail sales manager.  She has not engaged in substantial gainful activity since

September 7, 2005.

The ALJ found that plaintiff was not disabled and, therefore, not entitled to

disability insurance or supplemental security income benefits.  Although the medical

evidence established that plaintiff suffered from severe impairments, the judge

concluded that the severity of those impairments did not meet or equal any impairment

listed in the social security regulations.  The ALJ found that plaintiff had the residual

functional capacity to perform unskilled light work with certain nonexertional limitations.

Although these limitations precluded her past relevant work, the ALJ consulted the

Medical-Vocational Guidelines and determined that given plaintiff's age, education, work

experience, and residual functional capacity, she was not disabled.  He, therefore,

found plaintiff not disabled at step five of the sequential evaluation.  Plaintiff appealed

that decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this

action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her

physical and mental impairments preclude her from performing both her previous work

and any other "substantial gainful work which exists in the national economy."  42

U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social

Security [Act] requires the [Commissioner] to consider the combined effects of the

impairments in making a disability determination."  ***Campbell v. Bowen***, 822 F.2d 1518,

1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).   However, the mere existence of

a severe impairment or combination of impairments does not require a finding that an

individual is disabled within the meaning of the Social Security Act.  To be disabling, the

claimant's condition must be so functionally limiting as to preclude any substantial

gainful activity for at least twelve consecutive months.  ***See Kelley v. Chater,*** 62 F.3d

335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for

determining whether a claimant is disabled:

1.   The ALJ must first ascertain whether the claimant is
engaged in substantial gainful activity. A claimant who is
working is not disabled regardless of the medical findings.

2.   The ALJ  must then determine whether the claimed
impairment is "severe."  A "severe impairment" must
significantly limit the claimant's physical or mental ability to
do basic work activities.

3.   The ALJ must then determine if the impairment meets or
equals in severity certain impairments described in Appendix
1 of the regulations.

4.   If the claimant's impairment does not meet or equal a listed
impairment, the ALJ must determine whether the claimant
can perform his past work despite any limitations.

5.   If the claimant does not have the residual functional capacity
to perform his past work, the ALJ must decide whether the
claimant can perform any other gainful and substantial work
in the economy.  This determination is made on the basis of
the claimant's age, education, work experience, and residual
functional capacity.

20 C.F.R. § 404.1520(b)-(f).  ***See also Williams v. Bowen*** 844 F.2d 748, 750-52 (10th

Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four

3

steps of this analysis.  ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294

n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that

the claimant is capable of performing work in the national economy.  ***Id.***  A finding that

the claimant is disabled or not disabled at any point in the five-step review is conclusive

and terminates the analysis.  ***Casias v. Secretary of Health & Human Services***, 933

F.2d 799, 801 (10th Cir. 1991).

        Review of the Commissioner's disability decision is limited to determining

whether the ALJ applied the correct legal standard and whether the decision is

supported by substantial evidence.  ***Hamilton v. Secretary of Health and Human***

***Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194,

1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would

accept as adequate to support a conclusion.  ***Brown***, 912 F.2d at 1196.  It requires

more than a scintilla but less than a preponderance of the evidence.  ***Hedstrom v.***

***Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is

overwhelmed by other evidence in the record or constitutes mere conclusion."

***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed

to apply the correct legal test, there is a ground for reversal apart from a lack of

substantial evidence."  ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993).

Although a reviewing court should meticulously examine the record, it may not reweigh

the evidence or substitute its discretion for that of the Commissioner.  ***Id.***

### III.  LEGAL ANALYSIS

        Plaintiff complains principally that the ALJ erred in relying on the Medical-

Vocational Guidelines (the "grids") to determine that she was not disabled because her nonexertional impairments narrowed the range of jobs she could perform given her residual functional capacity.  Because I find that the ALJ did not substantiate his conclusion that the occupational base was not significantly impacted by plaintiff's nonexertional impairments, I remand for further proceedings.

As noted above, at step five of the sequential evaluation, the burden shifts to the Commissioner to demonstrate that there are jobs existing in significant numbers in the national and local economies that the claimant can perform despite her limitations.  One of the ways in which the Commissioner may meet this burden is by reference to the grids.  The grids are tables that direct a determination of "disabled" or "not disabled" based on intersecting considerations of a claimant's age, work experience, education, and residual functional capacity.  *See Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  However, "the grids may not be applied conclusively in a given case unless the claimant's characteristics precisely match the criteria of a particular rule."  *Id.* (internal citations and quotation marks omitted).  More particularly,

> [t]he grids should not be applied conclusively in a particular case . . . unless the claimant could perform the full range of work required of that . . . category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that range.  Moreover, resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain and mental impairments.  In that case, the grids may serve only as a framework to determine whether sufficient jobs remain within a claimant's range of residual functional capacity.

*Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991) (internal citations omitted).

The ALJ determined that plaintiff suffered from nonexertional impairments,

specifically that she could reach only occasionally in all directions with the right upper

extremity and had limited ability to deal with the public.  (Tr. 16.)  For this reason, he

could not rely on the grids conclusively.  *See Thompson*, 987 F.2d at 1488.  However,

even where nonexertional impairments are found, the ALJ may still use the grids as a "a

framework for consideration of how much the individual's work capability is further

diminished in terms of any types of jobs that would be contraindicated by the

nonexertional limitations."  *Id.* at 1492 (citation and internal quotation marks omitted);

*see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2).  That, in fact, is what the

ALJ seems to have done in this case.  (*See* Tr. 19 ("A finding of 'not disabled' is

therefore appropriate under the framework of this rule.").)

        Nevertheless, when consulting the grids as a framework for decision, there must

be some substantial evidence to support the conclusion that the nature of the claimant's

impairments does not take her case so far outside the norms contemplated by the grids

as to make them no longer a relevant basis for decision.  Typically, that proof comes

from a vocational expert, who can provide testimony as to whether the claimant's

particular limitations significantly erode the occupational base given her residual

functional capacity.  *See Trimiar v. Sullivan*, 966 F.2d 1326, 1333 (10th Cir. 1992).  The

Commissioner's regulations contemplate also that other sources of reliable job

information may be used to inform the step five determination.  *See* 20 C.F.R. §§

404.1566(d) & 416.966(d) (in considering availability of unskilled jobs in national and

local economies, Commissioner may "take administrative notice of reliable job

information available from various governmental and other publications," including, for

example, the Dictionary of Occupational Titles, Census Reports, and the Occupational

Outlook Handbook published by the Bureau of Labor Statistics).

The ALJ relied on none of these sources.  Instead, he simply concluded without

elaboration that plaintiff's nonexertional limitations "have little or no effect on the

occupational base of unskilled light work."  (Tr. 19.)  Untethered from any evidence of

record, this conclusion does not constitute substantial evidence in support of the

Commissioner's step five burden of proof.  ***See Bolan v. Barnhart***, 212 F.Supp.2d

1248, 1262 (D. Kan. 2002).

Moreover, the nonexertional mental limitations the ALJ found are not clearly

supported by the record.[1]  Although there is no question that plaintiff has a long history

of mental problems that have sometimes impacted her ability to work, it is not clear on

what basis the ALJ translated those problems into a conclusion that her public

interactions should be limited.[2]  Such a conclusion could have been grounded in the

opinion of consultative examiner Dr. Edwin A. Shockney, who found plaintiff seriously

limited in most areas associated with the mental demands of unskilled work and

assessed her a Global Assessment of Functioning ("GAF") score of 40.[3]  (Tr. 221.)

---

[1]  The ALJ conclusion that plaintiff's ability to reach in all directions was limited in the right upper extremity appears to be based on the findings of Dr. William P. Flinn, the consultative examiner. (***See*** Tr. 116 (finding abnormal range of motion in the right shoulder).)  However, the ALJ did not cite Dr. Flinn's findings in this regard and purportedly rejected his opinions regarding plaintiff's functional limitations as unsupported by the medical evidence.  (Tr. 18.)

[2]  Plaintiff testified at the hearing that she avoided past friends out of embarrassment or shame (Tr. 295), but there is no evidence that she had similar reactions when dealing with the general public.

[3]  "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'"  ***Langley v. Barnhart***, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (quoting American Psychiatric Association, ***Diagnostic and Statistical Manual of Mental Disorders*** at 32 (Text Revision 4th ed. 2000) ("DSM-IV")).  A GAF of 31 to 40 indicates the individual has an "impairment in reality testing or communication . . . or [a] major impairment in several areas, such as

However,  the ALJ specifically rejected Dr. Shockney's opinions on the ground that "such extreme limitations are not supported by the record as a whole."  (Tr. 18.)[4]  The non-examining consultant's opinion was likewise rejected.  (Tr. 18.)  The only other medical opinion regarding plaintiff's mental condition was that of consultative examiner Dr. Brad A. Marten, which the ALJ did not analyze at all.[5]  In short, the ALJ's finding in this regard is not substantiated by the record.

To be clear, it was not error for the ALJ to rely on the grids *per se.*  "Use of the grids is foreclosed only to the extent that nonexertional impairments further limit the range of jobs available to the claimant."  ***Channel v. Heckler***, 747 F.2d 577, 583 n.6 (10th Cir. 1984) (citation and internal quotation marks and alterations omitted).  The conclusion whether such impairments limit the range of available jobs, however, must be based on substantial evidence.  A conclusion in the guise of a finding, such as was put forth here, does not constitute substantial evidence.  ***See Hardman v. Barnhart***, 362 F.3d 676, 679 (10th Cir. 2004).  ***See also Grogan v. Barnhart***, 399 F.3d 1257, 1263 (10th Cir. 2005) (reviewing court cannot engage in *post hoc* rationalization of ALJ's decision based on reasons not advanced in opinion itself).

---

work or school, family relations, judgment, thinking, or mood."  **DSM-IV** at 32.  Although a low GAF score does not mandate a finding of disability, ***see Cox v. Apfel***, 2000 WL 1472729 at * (D. Kan. Feb. 24, 2000), it is highly probative when coupled with a more detailed description of how the rating affects a claimant's ability to work, ***see Eden v. Barnhart***, 2004 WL 2051382 at *2 (10th Cir. Sept. 14, 2004); ***Seymore v. Apfel***, 1997 WL 755386 at *2 (10th Cir. Dec. 8, 1997).

[4]  The ALJ's boilerplate reference to the record as whole, without citation to specific evidence therein, prevents meaningful review of his conclusions.  ***Hardman v. Barnhart***, 362 F.3d 676, 679 (10th Cir. 2004)

[5]  Moreover, Dr. Marten's opinion would not seem to support a conclusion that plaintiff requires limited public contact, since his principal diagnosis was "panic disorder *without agoraphobia*."  (Tr. 122 (emphasis added).)

I also agree with plaintiff that the ALJ erred in weighing the various medical opinions pertinent to her exertional impairments.  The ALJ rejected the opinion of Dr. William P. Flinn, a consultative examiner, who imposed restrictions incompatible with a residual functional capacity for light work (*see* Tr. 117), on the ground that "such extreme limitations in an eight-hour workday are not supported by the record as a whole" (Tr. 18).[6]  Again, this is a conclusion in the guise of a finding.  The ALJ cited to no record evidence illuminating why he thought Dr. Flinn's conclusions were inconsistent with the other evidence of record.  *See* **Social Security Ruling** 96-6p, 1996 WL 374180 at *2 (SSA July 2, 1996).  Nor did the ALJ explain why he found the non-examining physicians' opinions "consistent with the record as a whole."  (Tr. 18.)[7] The failure to tether these conclusions to any evidence of record makes it impossible to meaningfully review the ALJ's decision and warrants remand.[8]  *See* **Bolan**, 212 F.Supp.2d at 1262.

Although plaintiff requests a directed award of benefits, I do not find that this case presents an appropriate occasion for the exercise of my discretion in that regard.

---

[6]  The ALJ noted that Dr. Flinn did not specify whether the restrictions he found referred to a regular workday.  (Tr. 18.)  That alleged shortcoming strikes this court as strained, at best, but if in fact there were any question in that regard, it was the ALJ's duty to recontact Dr. Flinn for clarification.  *See* 20 C.F.R. §§ 404.1512(e) & 416.927(c)(3); **Social Security Ruling** 96-5p, 1996 WL 374183 at *6 (SSA July 2, 1996).

[7]  Given the nature of the factors that affect the weight to be afforded various medical opinions, the opinion of a consultative examiner, who personally met and evaluated the claimant, generally should entitled to more weight than that of a doctor who merely reviewed medical records.  **Vargas v. Sullivan**, 898 F.2d 293, 295-296 (2nd Cir. 1990); **Bradley v. Bowen**, 809 F.2d 1054, 1057 (5th Cir. 1987).

[8]  Although I do not address the issue directly, because the case must be remanded in any event, the ALJ should consider also whether plaintiff's other impairments, e.g., her right knee pain and cubital tunnel syndrome, are severe at step two of the sequential evaluation process.

*See* *Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993).[9]

**THEREFORE, IT IS ORDERED** as follows:

1.  That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **REVERSED**;

2.  That this case is **REMANDED** to the ALJ, who is directed to

> a.   Solicit the opinion of a vocational expert;
>
> b.   Recontact any treating or examining physicians for further clarification of their findings, seek the testimony of medical experts, order further consultative examinations, or otherwise further develop the record as he deems necessary;
>
> c.   Determine whether plaintiff's knee impairment and cubital tunnel syndrome constitute severe impairments at step two of the sequential evaluation process;
>
> d.   Reevaluate plaintiff's residual functional capacity at step four of the sequential evaluation process, articulating fully his findings in this regard and properly weighing the various medical opinions of record;
>
> e.   If necessary, redetermine whether there are other jobs existing in significant numbers in the local and national economies that plaintiff can perform despite her limitations at step five of the sequential

---

[9] I do not intimate by this ruling that plaintiff is or should be found disabled.

evaluation process; and

     f.     Reassess the disability determination; and

3.  That plaintiff is **AWARDED** her costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1).

     Dated January 11, 2010, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge